Signed and Filed: August 11, 2014



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                                 ) Bankruptcy Case
                                      ) No. 13-32456DM
ARCE RIVERSIDE, LLC,                  )
                                      ) Chapter 11
                     Debtor.          ) (Jointly Administered with
_____) Case No. 13-32457)
In re                                 )
                                      )
KERA RIVERSIDE, LLC,                  )
                                      )
                                      )
                     Debtor.          )
                                      )
_____)
```

MEMORANDUM DECISION ON VALUE OF DEBTORS' REAL PROPERTY

I. INTRODUCTION

On August 4, 2014, the court conducted a trial to determine the value of Debtors' real estate on Hole Avenue, in Riverside, California ("the Property"). Debtors appeared and were represented by counsel and presented their appraiser, Tom Curtis ("Curtis"), who testified by adopting the Declaration of Appraiser David M. Rosenthal. There was no objection to this procedure because Curtis and Mr. Rosenthal co-authored the Appraisal Report submitted on behalf of Debtors.

Creditor Penn Equities, LLC appeared and was represented by counsel and presented its appraiser, Jack Alexander ("Alexander")

-1-

and his appraisal of the Property.

Creditor MIC Infinity Fund, LLC appeared and was represented by counsel and presented its appraiser, Steven R. Fontes ("Fontes") and his appraisal of the Property.

Curtis valued the Property as of June 24, 2014, and concluded that its "as is" market value was $3,850,000. Alexander valued the Property as of February 25, 2014, and concluded that the market value was $2,900,000. Fontes used a Date of Value in between those of Curtis and Alexander, April 23, 2014, and concluded that the market value of the Property was $3,200,000.

In a typical valuation dispute (e.g., a lien strip motion for a single family residence), the court is presented with two competing appraisals, not normally very far apart. In that situation the normal practice may be simply to adjust the lower one upward somewhat, or the higher one downward somewhat, and find a value.

This case involves a valuation dispute over special purpose property with the court given three different appraisals. The highest and the lowest are nearly one million dollars apart, quite a spread for property worth less than four million dollars by anyone's opinion. Presented with this conflicting evidence, the court has decided to eliminate two of the three appraisers' opinions that are less reliable than the third, accepting the most persuasive one - that happens to be the mid-range value - subject to one slight adjustment.

For the reasons explained below, the court adopts and adjusts the Fontes appraisal and finds that the value of Debtors' Property

is $3,300,000.[1]

II. DISCUSSION[2]

The court is not persuaded by Curtis' appraisal for several reasons. Because the Property is currently under a long-term lease to a health club/fitness operator, Crunch LA Riverside, LLC ("Crunch"), Curtis looked to similar single purpose properties, all but one of which is operated by LA Fitness. LA Fitness runs a much higher quality operation than Crunch. The LA Fitness properties have pools, spas, other "up-scale" amenities, and, with one exception, were built within the last few years. In contrast, the Property was built in 1981 and until two years ago housed multi-use tenants. The Property was reconfigured in 2012 to accommodate Crunch, a single use special purpose tenant.

Further, three of four of Curtis' comparables were located a significant distance from Riverside, and even the Riverside location is twice the size of the building at the Property.

The court was also not satisfied that Curtis established a proper foundation for using a capitalization rate of 7% for the Property in his Income Capitalization Approach to value. The projected Net Operating Income ($279.850) is not too much above those of Alexander ($262,400) and Fontes ($271,438). And the court believes for this approach the use of similar special

---

[1] Pursuant to the agreement of all parties, the trial was to determine the value of the Property for all purposes in these administratively consolidated Chapter 11 cases, and in particular in anticipation of the Debtors filing a plan of reorganization based on that value. The court thus will fix the value of the Property at $3,300,000 as of the date of trial, August 4, 2014.

[2] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-3-

use properties is appropriate.  Curtis has not, however, provided much detail in his appraisal on how he selected the 7% figure, nor was his testimony any more convincing.  The court agrees with Fontes that brokers in the immediate area are a very reliable source, yet Curtis discounted that source for more than he should have.

Curtis saw a "red flag" in connection with an "inkling" he had about Crunch offsetting rent to make up for Debtors' failure to provide promised tenant improvements, but he really seemed to confuse the free rent available to Crunch with its unilateral choice to offset rent.

More importantly, he did not even mention the offset in his appraisal.  While this is a discreet matter soon to be resolved, it should have been addressed even if no adjustment is necessary (as discussed below).[3]

For all of these reasons, the court chooses to disregard the Curtis appraisal.

Alexander's approach seems much more in line with a methodology the court believes appropriate.  For sales comparisons he relied on comparable properties that were much closer to the Property than Curtis did.  The court was troubled, however, by the fact that Alexander did not inspect the interior of the Property. While it is unlikely that an interior inspection would have affected his bottom line in any meaningful way, nevertheless the

---

[3] His written report must also be questioned because of the admonition to him from his office colleague that the Debtors were seeking an "aggressive value."

-4-

court is used to hearing from appraisers who routinely inspect the interior of any property they appraise, especially a location having special use and the possibility of interior conditions influencing the analysis.

Alexander was not very convincing in how he arrived at a capitalization rate of 8.75%. There really was not a good explanation of how he settled on that number. Part of the problem may be that the comparable rentals he considered were all vacant, with lease terms "negotiable." His reconciliation of the Sales Comparison ($2,999,000) and Income Capitalization ($2,900,000) Approaches quite likely would have resulted in a higher final value had he used a more supportable capitalization rate even though he gave more weight to the Sales Comparison Approach.

For all of these reasons, the court chooses to disregard the Alexander appraisal.

Fontes had a much more thorough approach and used comparables for the Sales Comparison Appraisal that the court found more persuasive. Those comparables were close to the Property and thus carried more weight. He was much more convincing in justifying the capitalization rate of 8% that he used. He cited several rates for comparable sales and rentals and explained at trial how he used his judgment to glean from those other sources that 8% was correct rather than some sort of mathematical average. His reliance in part on identified local brokers as reliable sources, and how he weighted those sources, impressed the court very much.

Finally, Fontes was very convincing in the way he harmonized the Sales Comparison and Income Capitalization values, with one

-5-

slight exception.  He reduced his Income Capitalization value by $107,711 for remaining offsets by Crunch.

There are two specific reasons the court chooses to disregard Fontes' downward adjustment.  First, the offset is due to end within weeks of the date the court has chosen as the valuation date.  Second, and more important, the offset, while worth noting, subtracts from the rent received by Debtors while it actually eliminates a corresponding current liability they have to Crunch to provide the improvements. Thus the financial impact is a wash, having no discernable bearing on the value of the lease income stream and thus no impact on value.

In his Reconciliation of the Value Indications for the Sales Comparison ($3,325,000) and Income Capitalization ($3,125,000) Approaches, Fontes picked $3,200,000.  The court believes reversing that one downward adjustment makes sense, so it will add to Fontes' $3,200,000 value that offset adjustment (rounded) to find the value of the Property to be $3,300,000 as of August 4, 2014.

Concurrently with this Memorandum Decision the court is issuing its Order Fixing Value of Debtors' Real Property.

**END OF MEMORANDUM DECISION**