**Signed and Filed: April 22, 2016**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 13-32456DM |
| | ) Chapter 11 |
| ARCE RIVERSIDE, LLC, | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| In re | ) Case No. 13-32457DM |
| | ) Chapter 11 |
| KERA RIVERSIDE, LLC, | ) |
| Debtor. | ) |
| | ) |
| _____ | ) |

MEMORANDUM DECISION REGARDING MOTIONS FOR AWARD OF ATTORNEYS' FEES
UNDER CALIFORNIA CIVIL CODE SECTION 1717

**I.    BACKGROUND**

Following a complicated trial and extensive briefing of
multiple substantive and procedural issues, this court entered a
judgment in favor of debtors Arce Riverside, LLC and Kera
Riverside, LLC (collectively, "Debtors") on their objection to the
claim of Penn Equities, LLC ("Penn") on January 11, 2016.  The
judgment awarded Debtors, jointly and severally, $1,208,929.92
(which included usurious interest in the amount of $1,375,847 plus
attorneys' fees in the amount of $51,043.84 previously paid by
Debtors to Penn's counsel, minus an offset of $217,960.92 for

-1-

post-maturity interest due to Penn).  The court reserved

jurisdiction to hear and determine the attorneys' fees and costs

to be awarded to Debtors as the prevailing parties pursuant to

California Civil Code section 1717 ("CC 1717").

On January 26, 2016, Debtors filed their CC 1717 motion for

recovery of costs and attorneys' fees (Docket No. 272), as amended

on January 28 (Docket No. 277) (the "Fee Motion").  Debtors sought

to recover fees and costs in the amount of $298,904.54 incurred by

Rentschler/Tursi LLP ("Rentschler") (their special litigation

counsel); Wendel, Rosen, Black & Dean LLP ("Wendel") (their

current general bankruptcy counsel); and  Kornfield, Nyberg,

Bendes & Kuhner, P.C. ("Kornfield") (their former general

bankruptcy counsel) in objecting to the claim of Penn as well as

prosecuting their usury claim/defense against Penn.  *Fee Motion*,

Docket No. 277 at page 5, lines 20-23.

In addition, on January 26, 2016, the firm that represented

the guarantors[1] of certain loans by Penn to Debtors filed a

separate motion for attorneys' fees under CC 1717 ("Guarantor

Motion").  The Guarantors sought fees and costs in the amount of

$99,390.60 incurred in defending two separate state court lawsuits

filed by Penn while this bankruptcy case was pending.  Previously,

the parties (Debtors, Guarantors, and Penn) had stipulated to

dismissal of the state court actions on the condition that the

decisions of this court relating to the usury claim would be

binding.  *Stipulation re Trial Issues and Scheduling*, Docket No.

---

[1]The firm of Leonard, Dicker & Schreiber LLP ("Dicker")
represented the guarantors Neil Wachsberger, George A. Arce, Jr.
and Antonette Arce, individually and as Trustees of the Arce
Family Trust dated October 17, 2012 (the "Guarantors").

Case: 13-32456   Doc# 326   Filed: 04/22/16   Entered: 04/22/16 15:43:04   Page 2 of 9

184 at page 2 lines 19-27.  The parties agreed to submit to the

jurisdiction of this court "to determine all such rights and

claims."  *Id.*  They also agreed that the relief available from

this court to Debtors and Guarantors included "any attorneys' fee

and costs as a prevailing party, if awarded[.]"  *Id.* at page 3,

lines 7-10.

The court held a hearing on the Fee Motion and the Guarantor

Motion on February 26, 2016, and took both matters under

submission.  For the reasons set forth below, the court concludes

that $282,386.54 of the fees and costs sought in the Fee Motion

are compensable under CC 1717, while $85,170.55 of the fees and

costs sought in the Guarantor Motion are compensable.

**II.    GOVERNING LAW**

As noted, Debtors and Guarantors base their claims for fees

and costs on CC 1717, which provides:

>       In any action on a contract, where the contract
> specifically provides that attorney's fees and costs,
> which are incurred to enforce that contract, shall be
> awarded either to one of the parties or to the
> prevailing party, then the party who is determined to be
> the party prevailing on the contract, whether he or she
> is the party specified in the contract or not, shall be
> entitled to reasonable attorney's fees in addition to
> other costs.

Cal. Civ. Code § 1717(a).

In order for CC 1717 to apply, "three conditions must be

met[:]  the action generating the fees must have been an action

'on a contract, [and] the contract must provide that attorney's

fees incurred to enforce it shall be awarded either to one of the

parties or to the prevailing party, [and] the party seeking fees

must have prevailed in the underlying action."  *Bos v. Board of*

-3-

*Trustees*, --- F.3d ---, 2016 WL 1161262 (9th Cir. Mar. 24, 2016).

There is no dispute as to the applicability of the first two items

here.  And for the reasons stated by the court at the hearing on

the Fee Motion and the Guarantor Motion, Debtors (and thus the

Guarantors) are the prevailing parties, even if Debtors did not

succeed in obtaining treble damages.  Debtors did prevail on their

usury claim generally and Guarantors avoided any liability to

Penn, and thus received the greater relief in this action to

determine what amount of interest was owed to Penn.  Cal. Civ.

Code § 1717(b)(3).

A prevailing party entitled to contractual attorneys' fees

may recover "reasonable" attorneys' fees as determined by the

court. Civ. C. § 1717; *PLCM Group v. Drexler*, 22 Cal. 4th 1084,

1094–1095 (2000).  A court has wide discretion in determining what

constitutes reasonable attorneys' fees, as it has its own

expertise in the value of legal services performed in a case. *PLCM

Group*, 22 Cal. 4th at 1096; *Syers Properties III, Inc. v. Rankin*,

226 Cal. App. 4th 691, 698 (2014) [an "experienced trial judge is

the best judge of the value of professional services rendered in

his court"]).  The burden is on the party seeking attorneys' fees

to demonstrate that the fees it seeks are reasonable. *Gorman v.

Tassajara Development Corp*.  178 Cal. App. 4th 44, 98 (2009).

Because neither the Fee Motion nor the Guarantor Motion

requests the payment of fees and costs by the bankruptcy estate,

this court's Guidelines for Compensation and Expense Reimbursement

of Professionals and Trustees are inapplicable, notwithstanding

Penn's citation to them.  That said, the precepts underlying the

Guidelines also appertain to a fee award under CC 1717: are the

-4-

1  requested fees and costs reasonable?

2       Here, the court has considered the Fee Motion, the Guarantor

3  Motion, the objection by Penn, and the arguments made at the

4  February hearing.  It also has taken into account the work

5  performed and the difficult issues addressed by all parties in

6  this litigation.  Based on its independent analysis of the

7  foregoing and of each billing statement appended to both motions,

8  the court is adjusting and awarding fees as set forth below.

9  **III. ANALYSIS**

10      A.   <u>Rentschler</u>

11      With a few exceptions, Rentschler has satisfied its burden to

12  demonstrate the reasonableness of its fees.  Nonetheless, the time

13  entries occasionally reflect unnecessary duplication of work, both

14  within the firm and with the other firms representing Debtors and

15  Guarantors.  For example, on April 14 and 15, 2015, Ms. Rentschler

16  and other attorneys and legal assistants in her firm participated

17  in an "all hands" meeting to discuss strategy.  The court finds

18  that the fees (totalling $1,672.00) of Ms. Rentschler, who did

19  almost all of the work in this litigation, to prepare for and

20  attend the meeting were reasonable.  The fees of the other

21  participants (totaling $2,318.00), given their limited involvement

22  in this matter, are not reasonable.

23      Similarly, on September 25, 2015, Ms. Rentschler billed .9

24  hours ($342.00) for multiple calls to her clients and general

25  bankruptcy counsel regarding "R/T fee application."  The

26  preparation of her firm's fee application should not require

27  multiple telephone conferences with those outside of the firm.  On

28  the same date, she also billed time (.1 hour at $38.00) incurred

-5-

1  in responding to the objection of the United States Trustee to the

2  employment application to Wendel.  Again, this time entry is

3  insufficiently related to the underlying dispute with Penn, and

4  thus the fee is unreasonable.

5      Additionally, Rentschler professionals would occasionally

6  bill time for tasks that would have (or should have) been

7  performed by the Debtors' general counsel or for educating

8  themselves as to basic bankruptcy law.  For example, on April 14,

9  2015, Mr. Audal billed 4.5 hours at $1,170.00 for "[l]egal

10 research re bankruptcy procedures and proof of claim."  In light

11 of the foregoing duplicative or unnecessary work, the court finds

12 that $3,868.00 of the fees charged by Rentschler are not

13 reasonable.  The balance of its fees are reimbursable under CC

14 1717.

15      B.   Wendel

16      With the exception of an entry on September 28, 2015, for

17 briefly reviewing this court's decision and forwarding it to

18 "counsel and client," all of the time billed by Wendel to Kera is

19 identical to that billed to Arce.  That said, Ms. Berke-Dreyfuss

20 explained in paragraph 3 of her declaration attached as Exhibit S

21 to the Fee Application that the firm had set up a separate client

22 code for Arce and Kera and the billed time was split equally

23 between them until October 24, 2015.  Nonetheless, some of  Ms.

24 Berke-Dreyfuss's time for reviewing documents, preparing the

25 judgment, and working on appellate matters are duplicative of that

26 performed by the Rentschler firm and the court will reduce the

27 fees by $1,500.00.

28

Case: 13-32456   Doc# 326   Filed: 04/22/16   Entered: 04/22/16 15:43:04   Page 6 of 9

C.    Kornfield

        Kornfield seeks recovery of $53,997 for work on the usury

objection and $20,982 for trial preparation and attendance.  The

Kera time entries are almost identical to those for Arce,[2] yet

Kornfield offers no explanation for the duplication.[3]  The court

assumes that, like Wendel, Kornfield split time billed between the

two entities and that this is not a case of double-billing.

Nonetheless, assuming that Kornfield simply allocated the total of

$74,979.00 in fees between the two estates, the court is reducing

the fees because much of the work performed after the employment

of Rentschler as special counsel was unnecessary or duplicative.

        Upon Rentschler's employment, Kornfield played a secondary

role in the Penn litigation.  Nonetheless, it charged significant

fees in time entries lacking sufficient description to enable the

court to determine that the fees were reasonable, particularly

given that Rentschler was then primary litigation counsel.  For

example, on March 17, 2015, Mr. Kuhner charged Arce seven hours

and $2,730.00 in fees for "Stipulation, calendaring trial issues;

_____

        [2]In the claim objection category, Kornfield charged Arce
$26,284.00 (67.60 hours) and Kera $25,713.50 (66.25 hours) even
though the Kera time entries are duplicative of most of the Arce
entries. The sole exception is a charge to Kera dated February 5,
2015, for $190.00 for reviewing and revising the objection to
claim. Similarly, in the trial category, Kornfield charged both
Kera and Arce $10,491.00 (26.90 hours) with completely identical
time entries.

        [3]While the duplicative fees were included in Kornfield's
first interim fee applications (Docket Nos. 191 and 192), in its
orders dated July 6, 2015 (Docket Nos. 198 and 199), those fees
were not reviewed or allowed by the court in light of an agreement
with Penn by Kornfield to defer consideration of them pending
resolution of the claim objection. *See Statement by Debtor re
Deferment of Consideration of Fees Regarding Objection to Claim,*
Docket No. 194.

-7-

changes." The same hours and fees were charged to Kera, resulting

in an uninformative and unjustified charge of $5,460.00 and 14

hours. The vagueness of this entry is not singular; multiple

entries are indefinite and vague, which brings into question the

necessity of the work and the reasonableness of the fees,

particularly when those fees were clumped into quarter hour

increments. Given that the court is unable to conclude that the

fee amount sought by Kornfield is reasonable, it will reduce the

fees by $11,250.00 (or 15% of the total requested).

     D.   <u>Dicker</u>

     While the narrative of Guarantor Application apportions fees

between tasks, the fee entries do not. Therefore, the court can

only adjust the fees generally (and not by specific time entry)

regarding the projects described in the narrative. The court

acknowledges that because Penn filed two separate state court

lawsuits due to its counsel's conflicts, counsel for the

Guarantors had to engage in some duplicative tasks for which it

should be compensated.

     Turning to the project categories, the court will reduce the

fees sought for Project A by $2,200.00 as it included unnecessary

research regarding the automatic stay. It will also reduce as

unnecessary the fees sought for Project C by $2,500 because Dicker

filed a defective answer which required a demurrer and response.

The fees in Project D for staying apprised of the bankruptcy and

communicating with bankruptcy counsel ($7,233.50) are also

excessive and will be reduced by $3,600.00. Finally, the fees

sought in Project H for communications with opposing counsel and

clients ($15,850.00) are excessive, and will be reduced by $3,000.

-8-

In total, Dicker's reimburseable fees under CC 1717 will be reduced by $11,300, which results in compensable fees under CC 1717 in the amount of $85,170.55 and compensable costs of $2,920.05.

**IV.  CONCLUSION**

For the reasons set forth above, the court is granting both the Fee Motion and the Guarantor Motion, with the fees and costs adjusted accordingly.  The fees sought in the Fee Motion are reduced by a total of $16,618.00 (with the Rentschler fees reduced by $3,868.00, the Wendel fees by $1,500.00, and the Kornfield fees by $11,250.00).  The fees sought in the Guarantor Motion are reduced by $11,300.00.  All other costs and fees are reimbursable.

Counsel for Debtors should prepare an order granting the Fee Motion "for the reasons set forth" in this memorandum decision and adjust the fees awarded in accordance with the foregoing. Counsel for Guarantors should prepare a similar order with respect to the Guarantor Motion.  When submitting the orders, counsel should file (on the docket and not appended to the order) a proof of service reflecting compliance with B.L.R. 9021-1(c).

**END OF MEMORANDUM DECISION**